IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–02440–EWN–BNB

MATTHEW ARAGON,

     Plaintiff,

v.

LIFE QUOTES, INC.,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is a Title VII and Americans with Disabilities Act ("ADA") case.  Plaintiff Matthew Aragon alleges that Defendant Life Quotes, Inc. discriminated against him based upon his national origin and disabilities.  Plaintiff also asserts state law claims.  This matter is before the court on "Defendant's Motion for Summary Judgment," filed September 8, 2004.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1367 (2004).

## FACTS

### 1.    *Factual Background*

     Plaintiff, a Hispanic male, worked for Defendant as a life insurance salesperson from December 3, 2001 until July 12, 2002, when Defendant terminated Plaintiff's employment. (Def.'s Mem. Br. in Supp. of Mot. for Summ. J., Statement of Undisputed Facts ¶¶ 1, 4;

*admitted in pertinent part at* Pl.'s Resp. to Def.'s Mot. for Summ. J., Resp. to Statement of

Undisputed Facts ¶¶ 1, 4 [filed Oct. 8, 2004] [hereinafter "Pl.'s Resp."]; Pl.'s Resp., Statement

of Additional Facts ¶ 1; *admitted at* Def.'s Reply in Supp. of its Mot. for Summ. J., Resp. to

Statement of Additional Facts ¶ 1 [filed Nov. 3, 2004] [hereinafter "Def.'s Reply"].)  Plaintiff

suffers from bipolar disease and attention deficit disorder.  (Pl.'s Resp., Statement of Additional

Facts ¶ 6; *admitted in pertinent part at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 6.)

According to Plaintiff, these disorders affect his ability to concentrate, focus, think, and

remember.  (*Id.*; Pl.'s Resp., Pl.'s Dep. at 19, 27.)

 Plaintiff had a written employment agreement with Defendant.  (Def.'s Br., Statement of

Undisputed Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 2.)

This employment agreement specified that Plaintiff was an at-will employee and that Defendant

required Plaintiff to "devote all of his . . . time, energy and skill during regular business hours to

such employment and in the manner as directed by [Defendant]."  (*Id.*)  With regard to

termination, the agreement provided that

> [t]his Agreement may be terminated by either party on one day's
> written notice to the other.  If termination is at the will of
> [Defendant], [Plaintiff] shall be entitles [sic] to compensation for
> one calendar week.  In the event of any violation of the terms of
> this Agreement, [Defendant] may in such event terminate the
> employment without notice and with pay only to the date of
> termination.

(*Id.*, Ex. A ¶ 5 [Producer Employment Agreement]; *see also* Pl.'s Resp., Statement of Additional Facts ¶ 4; *admitted at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 4.)  The agreement also contained a choice of law provision that provided that Colorado law governs any dispute under the agreement.  (*Id.*, Ex. A ¶ 13 [Producer Employment Agreement].)  Defendant also had written policies stating that Defendant does not discriminate against employees on the basis of national origin or disabilities.  (Pl.'s Resp., Statement of Additional Facts ¶ 19; *admitted at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 19.)

During his employment with Defendant, Plaintiff was in Defendant's Virginia Team, and his supervisor was Kathy Silva, team leader of the Virginia Team.  (Def.'s Br., Statement of Undisputed Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 3.)  Ken Manley, Defendant's owner and president, testified that the "minimum expectation" for every sales agent, such as Plaintiff, was to "pay[] for himself."  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 4.c.; *admitted at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶ 4.c.)  Manley explained that a sales agent normally pays for himself when he makes either $40,000 to $50,000 a year, is on his way to making that amount per year, or brings in premiums in the amount of $50,000 to $60,000 a year.  (*Id.*)  According to Manley, only half of his sales agents pay for themselves in their first six months, and he does not fire a sales agent if the sales agent has not paid for him or herself within the first six months of employment.  (*Id.*)  Defendant does not have a written job description or essential function list for its sales agents, and the facts

taken in a light most favorable to Plaintiff show that there were no written standards for sales

agents to meet.  (*Id.*, Resp. to Statement of Undisputed Facts ¶¶ 4.a., 5.a.; *admitted in part,*

*denied in part at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶¶ 4.a., 5.a.)

According to Manley, during Plaintiff's tenure working for Defendant, Plaintiff brought

in $35,887 in annualized premium.  (Def.'s Reply, Reply to Statement of Undisputed Facts ¶

4.d.; Pl.'s Resp., Ex. Manley Dep. at 109.)[1]  In an April 12, 2002 letter to Plaintiff's worker's

compensation insurance carrier, Silva stated that Plaintiff's annual earned income was $52,136

per year.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 4.d.; *denied at* Def.'s Reply,

Reply to Statement of Undisputed Facts ¶ 4.d.; Pl.'s Resp., Ex. 3 [4/12/02 letter].)

As a general matter, the parties dispute whether Plaintiff performed the worst among

those hired around the same time as Plaintiff.  (Def.'s Br., Statement of Undisputed Facts ¶ 6;

*denied at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 6.)  Defendant sets forth

numerous alleged examples of Plaintiff's poor work performance, which I address below.

Plaintiff made more personal telephone calls at work than Defendant's other employees,

---

[1]Plaintiff asserts that Plaintiff brought in $46,653 in annualized premium, (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 4.d.), but the deposition testimony to which he cites supports the assertion that he brought in $35,887 in annualized premium, and $46,653 in annualized revenue.  (Pl.'s Resp., Ex. Manley Dep. at 109.)  Neither party explains whether this term means that (1) Plaintiff brought in $35,887 of premiums during his seven and a half months with Defendant, or (2) Plaintiff brought in an amount in seven and a half months that would be equivalent to $35,887 in premiums had he worked for Defendant for a year.  Based upon Manley's testimony, the latter explanation appears to be correct, (Pl.'s Resp., Manley Dep. at 110), which also comports to the use of the word "annualized."

consisting of roughly thirty-two percent of his total telephone calls.  (*Id.*, Statement of Undisputed Facts ¶ 5.a.; *admitted in part, denied in part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.a.; *admitted in part, denied in part at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶ 5.a.)  While many of Defendant's other sales agents also made a large number of personal calls, none made as many as Plaintiff.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.a.; *denied at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶ 5.a.)  Plaintiff spent excessive amounts of time away from his desk socializing with co-workers.  (Def.'s Br., Statement of Undisputed Facts ¶ 5.g.; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.g.)[2]  Although partially contradicted with other evidence, discussed below, as a general matter Plaintiff consistently received fewer life insurance applications from potential customers and consistently sold fewer life insurance policies to customers than all or almost all members of his team.  (*Id.*, Statement of Undisputed Facts ¶ 5.c.; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.c.)  Defendant notes that Plaintiff used his company computer to access the internet, but his actions were not necessarily in violation of company policy.  (*Id.*, Statement of Undisputed Facts ¶ 5.d.; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.d.)  The parties

---

[2]Although Plaintiff denies this averment, his denial is premised upon the facts that Defendant did not have written standards regarding the minimum time a sales agents had to spend at his or her desk.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.g.)  Since this denial does not address the assertion that Plaintiff spent an excessive amount of time away from his desk, I deem this fact admitted.  For the same reasons, I also deem admitted Plaintiff's response paragraph 5.c.

dispute whether Plaintiff did or did not follow company policy regarding the use of certain sales forms.  (*Id.*, Statement of Undisputed Facts ¶ 5.e.; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.e.)  The parties dispute whether Plaintiff was often absent from work or tardy.  (*Id.*, Statement of Undisputed Facts ¶ 5.f.; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.f.; *compare* Def.'s Br., Ex. I [Silva's notes]; *with* Pl.'s Resp., Dep. of Silva at 77–81.)

   In April 2002, Silva complained to Manley that Plaintiff spent too much time socializing, and lacked discipline.  (Def.'s Br., Statement of Undisputed Facts ¶ 8; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 8.)  Manley told Silva to give Plaintiff one more chance, and if his performance did not improve, she should terminate his employment.  (*Id.*)  Thus, on May 7, 2002, Silva placed Plaintiff on a two-week correction plan.  (*Id.*, Statement of Undisputed Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 9; Pl.'s Resp., Statement of Additional Facts ¶ 9; *admitted at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 9.)  Among other things, this plan required Plaintiff to report to work on time, to timely process applications, and to sell five insurance policies each week.  (Def.'s Br., Statement of Undisputed Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 9.)

   On May 15, 2002, Plaintiff drafted a letter to Silva explaining that he suffered from "clinically diagnosed bi-polar disorder," and that he was "currently under a doctor's care and

[could] effectively treat this condition with medication." (*Id.*, Statement of Undisputed Facts ¶ 10; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.)  In this letter, Plaintiff then explained that "I do not believe that this condition has adversely impacted the performance of my duties and responsibilities to [Defendant]." (*Id.*)  Plaintiff never gave this letter to Silva.  (*Id.*)  Rather, Plaintiff gave this letter to Manley in a meeting on May 17, 2002, and complained in this meeting to Manley about Silva "harassing" him.  (*Id.*, Statement of Undisputed Facts ¶¶ 10, 15.c.; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 10, 15.c.)[3]  Manley told Plaintiff to "put [his] blinders on and don't get distracted." (*Id.*, Statement of Undisputed Facts ¶ 10; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.)

The parties offer differing accounts as to all of the other events during this meeting.  The parties dispute whether Plaintiff told Manley at the meeting that he had bipolar disease and attention deficit disorder, and that it was a problem that Silva was considering moving his desk from a quiet corner to a more noisy area with many more distractions.  (Pl.'s Resp., Statement of Additional Facts ¶¶ 12–13; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶¶

---

[3]According to Plaintiff's response brief, Plaintiff asked Manley to stop Silva from moving him from his corner office.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 15.c.(i).)  While this statement is supported by other evidence, discussed below, the evidentiary record cited by Plaintiff in support of this statement does not deal with this issue.  (Pl.'s Resp., Pl.'s Dep. at 142.)  This is one of several incidents where Plaintiff's proffered facts simply do not conform with the portions of the record to which he cites.  (*See, e.g.,* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 5.d.(iii); Pl.'s Resp., Statement of Additional Facts ¶ 2.)

12–13.)  Plaintiff also complained, according to Plaintiff, that Silva was not providing him with the same number of leads as she provided to other employees.  (*Id.*, Statement of Additional Facts ¶ 13; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 13.)  The parties further dispute whether Manley told Plaintiff that he was concerned about Plaintiff's allegedly inadequate job performance.  (Def.'s Br., Statement of Undisputed Facts ¶ 10; *denied in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.)

After this meeting, Manley instructed Silva to be sure to keep notes and records about Plaintiff because Manley believed that Plaintiff "ha[d] another agenda."  (*Id.*, Statement of Undisputed Facts ¶ 10; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.)  Manley did not discuss with Silva whether she should move Plaintiff's work station.  (Pl.'s Resp., Statement of Additional Facts ¶ 14; *admitted in pertinent part at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 14.)

Plaintiff asserts that in late May 2002, Silva told Defendant's licensing clerk to stop processing Plaintiff's license as an insurance agent.  (*Id.*, Statement of Additional Facts ¶ 15; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 15.)  On June 3, 2002, Silva drafted a memorandum on Plaintiff's job performance, stating that he has improved on "[c]oming in on time," and "staying focused at his desk," but that he still needs improvement in "reaching [his] numbers."  (*Id.*, Ex. 7 [6/3/02 Mem.].)  In June 2002, Silva and Plaintiff met to discuss Plaintiff's purported failure to meet the requirements of the two week correction plan.  (Def.'s

Br., Statement of Undisputed Facts ¶ 11; *deemed admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Facts ¶ 11.)[4]  According to Plaintiff, and disputed by Defendant, Plaintiff informed

Silva about his disabilities and requested that (1) he be permitted to organize his desk in a fashion

that accommodated his disabilities and (2) he not be moved from his corner location, where it was

quieter and there were less distractions, to a busier location.  (Pl.'s Resp., Statement of

Additional Facts ¶ 11; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 11.)

During the month of June, Manley complimented Plaintiff on his sales performance

several times.  (*Id.*, Resp. to Statement of Undisputed Facts ¶ 11.b.; *denied at* Def.'s Reply,

Reply to Statement of Undisputed Facts ¶ 11.b.)  Defendant also gave Plaintiff a bonus during

this time.  (*Id.*)  Defendant, furthermore, gave Plaintiff a "Top Gun" award because out of

_____

[4]The factual briefing by the parties on this issue is horrendous.  Defendant, apparently,
supports its averment by an exhibit citation at the conclusion of its subsequent factual averment
in the same paragraph, in which it claims the cited exhibit is Silva's notes.  (Def.'s Br., Statement
of Undisputed Facts ¶ 11.)  Defendant has not attached any affidavit identifying these notes as
Silva's, and the handwritten notes themselves state, in part, that "Kathy [Silva] says Matt[, the
Plaintiff,] lacks discipline and socializes too much."  (*Id.*, Ex. P [handwritten notes].)  I find it
highly unlikely that Silva would refer to herself in the third person in her notes, which suggests
that these notes were written by someone other than Silva.  Moreover, the notes are dated as
"4/8" as opposed to a June 2002 date.  (*Id.*)

Plaintiff's response is no more helpful.  Plaintiff states without any citation that "Ms.
Silva did not meet with Mr. Aragon to discuss his failure to meet the requirements of the
correction plan."  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.a.)  By not citing to
this contention, Plaintiff violates my procedural rules.  (Practice Standards — Civil, Special
Instructions Concerning Motions for Summary Judgment ¶ 4.)  Moreover, Plaintiff states in a
later point in his brief that "[d]uring the meeting on the two-week correction plan, [Plaintiff]
informed [] Silva about his disabilities . . ."  (Pl.'s Resp., Statement of Additional Facts ¶ 11.)

Defendant's forty-nine sales agents, Plaintiff was the ninth highest agent in average premiums delivered year-to-date, and the third highest in average premiums.  (*Id.*)

On June 11, 2002, Silva purportedly told a co-worker that Plaintiff "was all messed up on his head because he was Bi-polar and a bad person and they were going to terminate him but he just didn't know it." (Pl.'s Resp., Statement of Additional Facts ¶ 16; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 16; Pl.'s Resp., Ex. 17 [Kiker Aff.].)  Silva went on to state that Plaintiff "had Attention Deficit Disorder and that even if he listened he wouldn't be able to hear or remember." (Pl.'s Resp., Ex. 17 [Kiker Aff.].)  According to this co-worker, Silva purposefully treated Plaintiff worse than the other sales agents.  (*Id.*)

In late June 2002, Silva moved Plaintiff to a cubicle close to hers.  (Def.'s Br., Statement of Undisputed Facts ¶ 11; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.c.)  According to Plaintiff, he once again asked Silva not to move his cubicle because there were too many distractions in the new location that would interfere with his attention deficit disorder impairment.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.c.; Pl.'s Resp., Pl.'s Dep. at 59–61.)  Plaintiff offered to get a note from his psychiatrist attesting to the fact that Silva shouldn't move his cubicle, but Silva did not respond and still chose to move his cubicle.  (*Id.*)  According to Silva's affidavit, Silva avers that she moved Plaintiff's cubicle near to her because she was concerned about Plaintiff's co-workers' reports that Plaintiff was making inappropriate statements to potential customers in an attempt to

generate business.  (Def.'s Br., Statement of Undisputed Facts ¶ 11; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.d.)[5]

In late June and early July 2002, Plaintiff sold very few life insurance policies.  (Def.'s Br., Statement of Undisputed Facts ¶ 12; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 12.)  Silva terminated Plaintiff's employment with Defendant on July 12, 2002, purportedly due to inadequate job performance.  (*Id.*, Statement of Undisputed Facts ¶¶ 1, 12; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 1, 12.)  Manley, apparently, concurred with this decision.  (*Id.*, Statement of Undisputed Facts ¶ 13; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 13.)  Defendant did not provide Plaintiff with written notice of termination and did not provide Plaintiff with severance pay.  (Pl.'s Resp., Statement of Additional Facts ¶ 5; *admitted in pertinent part at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 5.)

The parties agree that Manley and Silva were Defendant's two employees who made all pertinent job decisions regarding Plaintiff.  (*Id.*, Statement of Undisputed Facts ¶ 13; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 13.)  According to Manley and Silva's affidavits, neither of them knew Plaintiff's national origin at any time before he filed his charge of discrimination with the Equal Employment Opportunity Commission

---

[5]This statement is contrary to Silva's deposition testimony, where she responded to the question to identify all of her concerns with Plaintiff's performance without identifying this concern.  (*See* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.d.)

("EEOC").  (*Id.*, Statement of Undisputed Facts ¶ 13; *denied in pertinent part at* Pl.'s Resp.,

Resp. to Statement of Undisputed Facts ¶ 13.)  According to Plaintiff's deposition testimony,

on the other hand, Manley made a comment to Plaintiff during Plaintiff's employment with

Defendant that people of Plaintiff's national origin tanned more deeply than Caucasians.  (Pl.'s

Resp., Resp. to Statement of Undisputed Facts ¶ 13.b.)

**2.**   ***Procedural History***

Plaintiff filed a charge of discrimination on May 6, 2003 with the EEOC and the Colorado

Civil Rights Commission.  (Compl. and Jury Demand ¶ 4 [filed Dec. 2, 2003] [hereinafter

"Compl."].)  After receiving a notice of right to sue, Plaintiff filed this action on December 2,

2003, alleging Title VII discrimination, ADA discrimination, breach of contract, and promissory

estoppel.  (Compl.)  On September 9, 2004, Defendant filed its motion for summary judgment

on all of Plaintiff's claims for relief and brief in support thereof.  (Def.'s Mot. for Summ. J. [filed

Sept. 9, 2004]; Def.'s Br.)  This motion is now fully briefed.

## ANALYSIS

**1.**   ***Standard of Review***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

(2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990]).

**2.      *Plaintiff's Title VII Claim***

42 U.S.C. § 2000e-2(a)(1) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race . . . or

national origin." As a preliminary matter, Defendant asserts that since neither of the two

decision makers, Manley and Silva, were aware that Plaintiff is Hispanic, Plaintiff's Title VII

claim fails. (Def.'s Br. at 9–10.) The facts taken in a light most favorable to Plaintiff, however,

demonstrate that Manley was aware that Plaintiff is Hispanic. (*See* Pl.'s Resp., Resp. to

Statement of Undisputed Facts ¶ 13.b.) Defendant's argument as to this preliminary matter

therefore fails.

      In a Title VII case, a plaintiff can demonstrate discrimination by either (1) presenting

direct evidence of a discriminatory motive in her termination, or (2) using the *McDonnell Douglas*

burden-shifting framework. *Burn v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275,

1283 (10th Cir. 2003); *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1476–77 (10th

Cir. 1996). The parties agree that Plaintiff's Title VII claim is governed by the *McDonnell*

*Douglas* burden-shifting framework. (Def.'s Br. at 10–14; Pl.'s Resp. at 29–39.)

      Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first establish a

*prima facie* case. In order to state a *prima facie* case of Title VII discrimination, the discharged

employee must show that: (1) he belongs to the protected class, (2) he was qualified for his job,

(3) the employer discharged him despite his qualifications, and (4) after his discharge the job

remained available. *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174–75 (10th Cir.

1996). The fourth factor can be met in other ways, *Ortiz v. Norton*, 254 F.3d 889, 895 (10th Cir.

2001), such as plaintiff showing that "[]he was treated less favorably than others not in the

-14-

protected class." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1315–16 (10th Cir. 1999) (internal quotation marks omitted), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

Here, Defendant's *prima facie* argument deals with the second prong of the test, whether Plaintiff was qualified for his job. (Def.'s Br. at 10–13.) Since the parties do not address the other prongs of the *prima facie* test, I will assume that Plaintiff has met them. Although there is a plethora of evidence that Plaintiff was not performing his job well, (*see, e.g., id.*, Statement of Undisputed Facts ¶¶ 4–6; *admitted in part, denied in part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 4–6), there is also a significant amount of evidence that contradicts the foregoing and tends to show that Plaintiff's job performance was strong. For example, the facts taken in a light most favorable to Plaintiff show that (1) after Plaintiff worked for a few months, Silva forecasted Plaintiff's earned income to be $52,136 per year, well within Manley's parameters for a good sales agent, (2) Manley complimented Plaintiff's performance several times, (3) Defendant gave Plaintiff a bonus in June 2002, and (4) Defendant gave Plaintiff a "Top Gun" award because out of forty-nine sales agents, Plaintiff was the ninth highest agent in average premiums delivered year-to-date, and the third highest in average premiums. (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 4.d., 11.b.; *denied at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶ 4.d., 11.b.) Moreover, even assuming Plaintiff was not "paying for himself" during his employment, (*see* Def.'s Reply, Reply to Statement of Undisputed Facts

¶ 4.d.; Pl.'s Resp., Ex. Manley Dep. at 109), this alone does not show that his performance was poor because Manley testified that only half of his sales agents pay for themselves in their first six months, and he does not fire a sales agent if the sales agent has not paid for him or herself within the first six months of employment.  (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 4.c.; *admitted at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶ 4.c.)  Thus, the facts taken in a light most favorable to Plaintiff show that his work performance was strong.

Although the parties do not dispute that Plaintiff's performance was inadequate during his last two weeks working for Defendant, (Def.'s Br., Statement of Undisputed Facts ¶ 12; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 12), taking the facts in a light most favorable to Plaintiff, I must conclude that this was a result of Silva's actions that prevented Plaintiff from adequately performing his work.  (*Id.*, Statement of Undisputed Facts ¶ 11; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.c.; Pl.'s Resp., Pl.'s Dep. at 59–61; Pl.'s Resp., Ex. 17 [Kiker Aff.].)  In light of the foregoing, Plaintiff has met the second prong of his *prima facie* case.

Once the plaintiff makes a *prima facie* showing, the defendant "must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003).

> The defendant's burden is merely to articulate through some proof
> a facially nondiscriminatory reason for the termination; the
> defendant does not at this stage of the proceedings need to litigate
> the merits of the reasoning, nor does it need to prove that the

> reason relied upon was bona fide, nor does it need to prove that the
> reasoning was applied in a nondiscriminatory fashion.  However,
> the proffered reason for the action taken against the . . . employee
> must be reasonably specific and clear.

*EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (citations omitted) (footnote

omitted) (internal quotation marks omitted); *see also Sorensen v. City of Aurora*, 984 F.2d 349,

352 (10th Cir. 1993).  Defendant has proffered a legitimate nondiscriminatory reason for the

adverse employment action — Plaintiff's purportedly poor employment performance.  (*See,*

*e.g.,* Def.'s Br., Statement of Undisputed Facts ¶¶ 4–6; *admitted in part, denied in part at* Pl.'s

Resp., Resp. to Statement of Undisputed Facts ¶¶ 4–6.)

   At the next stage of analysis, the burden shifts back to the plaintiff to show pretext.  A

plaintiff in a Title VII discrimination case may demonstrate pretext by "showing 'such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

unworthy of credence.'"  *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir.  2000)

(quoting *Bullington*, 186 F.3d at 1317.)  Here, the facts as set forth above, taken in a light most

favorable to Plaintiff, demonstrate pretext.  Silva and Manley's purported problems with

Plaintiff's job performance are contrary to (1) Silva's forecast of Plaintiff's earnings, (2)

Manley's statements about Plaintiff's strong job performance, (3) several of the records regarding

Plaintiff's purportedly strong job performance, and (4) Silva's actions that prevented Plaintiff

from adequately performing his work at the end of his employment period.  (Def.'s Br.,

Statement of Undisputed Facts ¶ 11; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement

of Undisputed Facts ¶ 11.c.; Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 4.d., 11.b.;

*denied at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶ 4.d., 11.b.; Pl.'s Resp., Pl.'s

Dep. at 59–61; Pl.'s Resp., Ex. 17 [Kiker Aff.].)  Moreover, long before Defendant fired

Plaintiff, Silva decided to stop processing Plaintiff's insurance agent license, suggesting that

Defendant had long planned Plaintiff's termination.  (Pl.'s Resp., Statement of Additional Facts ¶

15; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 15.)  Furthermore,

according to one of Plaintiff's coworkers, Silva planned to terminate Plaintiff as of June 11, 2002.

(*Id.*, Ex. 17 [Kiker Aff.].)  Accordingly, I deny Defendant's motion for summary judgment on

Plaintiff's first claim for relief, Title VII discrimination.

**3.     *Plaintiff's ADA Claim***

        Defendant argues that it is entitled to a judgment as a matter of law on Plaintiff's ADA

discrimination claim.  (Def.'s Br. at 14–18.)  The burden shifting analysis established in

*McDonnell Douglas* generally applies to ADA disparate treatment claims.  *See Hardy v. S.F.*

*Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  Under that analysis, Plaintiff carries

the burden of raising a genuine issue of material fact on each element of his *prima facie* case.  If

Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to offer a legitimate

nondiscriminatory reason for its employment decision.  *Id.*  If Defendant articulates a

nondiscriminatory reason, the burden shifts back to Plaintiff to show a genuine issue of material

fact as to whether Defendant's reason for the adverse employment action is pretextual. *Id.* at 1079–80.

To establish a *prima facie* case under the ADA, Plaintiff must show: (1) he is disabled within the meaning of the ADA, (2) he is qualified, that is, with our without reasonable accommodation (which he must describe) he is able to perform the essential functions of the job, and (3) Defendant terminated him because of his disability. *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995); *see also Pack v. Kmart Corp.*, 166 F.3d 1300, 1304 (10th Cir. 1999). Defendant argues that Plaintiff cannot meet any of the three elements of the *prima facie* test. (Def.'s Br. at 14–18.) I address each element in turn.

First, the ADA requires that Plaintiff show that he is disabled within the meaning of the ADA. *Pack*, 166 F.3d at 1304.

> The ADA defines a disability as (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. The statutory requirement that disability determinations be made with respect to the individual, contemplates an individualized, a case-by-case determination of whether a given impairment substantially limits a major life activity of the individual.

*Id.* (internal quotation marks omitted) (citation omitted) (quoting 42 U.S.C. § 12102[2] [1999]). Plaintiff asserts that he meets the first category — an impairment that substantially limits a major life activity. (Pl.'s Resp. at 39–41.)

> A physical or mental impairment is substantially limiting if the
> affected individual is: (i) Unable to perform a major life activity
> that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration
> under which an individual can perform a particular life activity as
> compared to the condition, manner, or duration under which the
> average person in the general population can perform that same
> major life activity. . . . [The court should also consider] any
> mitigating or corrective measures utilized by the individual, such as
> medications.

*Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1130 (10th Cir. 2003) (citations omitted)

(internal quotation marks omitted).

Here, Plaintiff suffers from bipolar disease and attention deficit disorder.  (Pl.'s Resp.,

Statement of Additional Facts ¶ 6; *admitted in pertinent part at* Def.'s Reply, Resp. to Statement

of Additional Facts ¶ 6.)  According to Plaintiff, these disorders affect his ability to concentrate,

focus, think, and remember.  (*Id.*, Statement of Additional Facts ¶ 6; *denied in pertinent part at*

Def.'s Reply, Resp. to Statement of Additional Facts ¶ 6; Pl.'s Resp., Pl.'s Dep. at 19, 27.)

Bipolar disease and attention deficit disorder may constitute an impairment within the meaning of

the ADA.  *Doebele*, 342 F.3d at 1130 n.3.  Thinking and remembering are major life activities.

*Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378, 383 (3d. Cir. 2004) (thinking constitutes a major

life activity); *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720–21 (8th Cir. 2003) (same); *Nawrot*

*v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir. 2002) (same); *cf. Lanman v. Johnson County*, 393 F.3d

1151, 1157 (10th Cir. 2004) (assuming, without deciding, that thinking is a major life activity).

All of Plaintiff's alleged impairments, *in toto*, limit Plaintiff's "working" ability, which is a major

life activity.  45 C.F.R. § 84.3(j)(2)(ii) (2004) (listing examples of major life activities, including

working).  Taking all disputed facts in favor of Plaintiff, as I must, these impairments

significantly restricted Plaintiff's major life activities because Plaintiff was unable to perform his

work when he was in an environment with too many distractions, but was able to adequately

perform his work when not in that environment.  (Pl.'s Resp., Resp. to Statement of Undisputed

Facts ¶ 11.b.; *denied at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶ 11.b.; Def.'s

Br., Statement of Undisputed Facts ¶ 12; *admitted in pertinent part at* Pl.'s Resp., Resp. to

Statement of Undisputed Facts ¶ 12.)  Moreover, despite Plaintiff's statement that his

impairments were controlled by medication, (*see* Def.'s Br., Statement of Undisputed Facts ¶ 10;

*admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10), this

statement dealt with Plaintiff's ability to perform work in the quieter location, not the location

with many distractions.  Thus, Plaintiff has met the first prong of his *prima facie* case.

Second, the plaintiff must show that he is qualified, which means that with our without

reasonable accommodation, which the plaintiff must describe, the plaintiff is able to perform the

essential functions of the job.  *White*, 45 F.3d at 360–61.  The ADA defines a "qualified

individual" as "an individual with a disability who, with or without reasonable accommodation,

can perform the essential functions of the employment position that such individual holds or

desires."  42 U.S.C. § 12111(8).  Here, the facts taken in a light most favorable to Plaintiff

demonstrate that he could perform the essential functions of his job, with the caveat that he could

only do so when his desk was in a corner location. *See Analysis* § 2., *supra*; (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 4.d., 11.b.; *denied at* Def.'s Reply, Reply to Statement of Undisputed Facts ¶¶ 4.d., 11.b.) Once Defendant moved Plaintiff's desk to an area with more distractions, Plaintiff could no longer perform the essential functions of his job. (Def.'s Br., Statement of Undisputed Facts ¶ 12; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 12.) Since Defendant permitted Plaintiff to work in the corner location, and the propriety of its requirement that Plaintiff move to a location by Silva is disputed, I conclude that keeping Plaintiff in a corner location would have been a reasonable accommodation. (*Id.*, Statement of Undisputed Facts ¶ 11; *denied in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 11.c., 11.d.)[6] Thus, with a reasonable accommodation, Plaintiff was able to perform the essential functions of his job.

Third, Plaintiff must show that Defendant terminated him because of his disability. *White*, 45 F.3d at 360–61. In order to establish this final element, the plaintiff must present some affirmative evidence that disability was a determining factor in the employer's decision. *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1259 (10th Cir. 2001). The facts taken in a light most favorable to Plaintiff demonstrate two pieces of evidence that Plaintiff's disabilities were a

---

[6]Plaintiff also states that a reasonable accommodation would have been to transfer him to another team. (Pl.'s Resp. at 41.) This argument is meritless because Plaintiff has not described how being on another team would be an accommodation that would permit him to perform his job with attention deficit disorder and bipolar disease. Plaintiff also argues that he was not permitted to organize his desk in a specific fashion. (Pl.'s Resp. at 41.) I need not address this argument since I resolve this issue regarding the location of Plaintiff's desk.

determining factor in Defendant's decision.  First, despite Plaintiff's repeated remonstrations wherein Plaintiff explained the problem of moving his desk in light of his disabilities, Defendant chose to move Plaintiff's desk.  (Def.'s Br., Statement of Undisputed Facts ¶ 11; *admitted in pertinent part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.c.; Pl.'s Resp., Pl.'s Dep. at 59–61; Pl.'s Resp., Statement of Additional Facts ¶¶ 11–13; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶¶ 11–13.)  Second, according to the affidavit of one of Plaintiff's co-workers, Silva stated that Plaintiff "was all messed up on his head because he was Bi-polar and a bad person and they were going to terminate him but he just didn't know it." (Pl.'s Resp., Statement of Additional Facts ¶ 16; *denied at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 16; Pl.'s Resp., Ex. 17 [Kiker Aff.].)  Silva went on to state that Plaintiff "had Attention Deficit Disorder and that even if he listened he wouldn't be able to hear or remember." (Pl.'s Resp., Ex. 17 [Kiker Aff.].)  According to this co-worker, moreover, Silva purposefully treated Plaintiff worse than the other sales agents.  (*Id.*)  These two pieces of evidence demonstrate, for the purposes of summary judgment, that Plaintiff's disability was a determining factor in Defendant's decision to terminate Plaintiff.

In light of the foregoing, Plaintiff has demonstrated a *prima facie* case of ADA discrimination for the purposes of resisting a motion for summary judgment.  Since Defendant's argument only addresses Plaintiff's failure to demonstrate a *prima facie* case, (Def.'s Br. at 14–18), I conclude that Plaintiff survives summary judgment on his ADA claim for relief.

Nevertheless, if I were to address the other two stages, I would conclude that Plaintiff

demonstrated pretext for the reasons set forth in *Analysis* § 2, *supra*.

**4.**      ***Plaintiff's State Law Claims***

Defendant moves for summary judgment on Plaintiff's two state law claims, breach of

contract and promissory estoppel.  (Def.'s Br. at 18–20.)  I address each claim in turn.

Plaintiff's breach of contract claim is premised upon Defendant's failure to give Plaintiff

one day written notice and a week of severance pay.  (Pl.'s Resp. at 44–45.)  This is based upon

the termination clause which provides that

> [t]his Agreement may be terminated by either party on one day's
> written notice to the other.  If termination is at the will of
> [Defendant], [Plaintiff] shall be entitles [sic] to compensation for
> one calendar week.  In the event of any violation of the terms of
> this Agreement, [Defendant] may in such event terminate the
> employment without notice and with pay only to the date of
> termination.

(Def.'s Br., Ex. A ¶ 5 [Produce Employment Agreement]; *see also* Pl.'s Resp., Statement of

Additional Facts ¶ 4; *admitted at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 4.)

Defendant contends that, in accord with the third sentence quoted above, Plaintiff violated one of

the terms of the agreement so it was not bound to provide notice and one extra week of pay.

(Def.'s Br. at 18–20.)

The employment agreement required Plaintiff to "devote all of his . . . time, energy and

skill during regular business hours to such employment and in the manner as directed by

[Defendant]." (*Id.*, Statement of Undisputed Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 2.) It is undisputed that Plaintiff (1) made numerous personal telephone calls during regular business hours, and (2) spent excessive amounts of time away from his desk socializing with co-workers. (*Id.*, Statement of Undisputed Facts ¶¶ 5.a., 5.g.; *admitted in pertinent part or deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶¶ 5.a., 5.g.) Accordingly, Plaintiff did not "devote all of his . . . time, energy and skill during regular business hours to [his] employment." (*Id.*, Statement of Undisputed Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 2.) Although for the purposes of summary judgment Plaintiff performed his job satisfactorily, *see Analysis* § 2., *supra*, satisfactory job performance and failure to meet the precise language of the employment agreement are not mutually exclusive. Since Plaintiff did not devote all of his time to his employment, even though Plaintiff performed his job in a satisfactory manner as set forth above, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

Plaintiff's promissory estoppel claim likewise fails. Plaintiff's promissory estoppel claim is based upon Defendant's policy prohibiting discrimination based upon national origin or disability. (Pl.'s Resp. at 45.) These written policies state that Defendant does not discriminate against employees on the basis of national origin or disabilities. (*Id.*, Statement of Additional Facts ¶ 19; *admitted at* Def.'s Reply, Resp. to Statement of Additional Facts ¶ 19.).

> In order to sustain a claim under the theory of promissory estoppel, plaintiff must demonstrate that the employer should

> have reasonably expected the employee to consider the policy as a
> commitment from the employer, that the employee reasonably
> relied on the statements to [his] detriment, and that injustice can be
> avoided only by enforcement of the policy.

*Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000) (applying Colorado

law) (citation omitted) (internal quotation marks omitted) (alteration in original).  These general

policy statements are too equivocal to constitute a promise upon which Defendant could expect

Plaintiff to reasonably rely.  *Cf. Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir.

1994) (holding that "if the alleged promises are nothing more than 'vague assurances'" than there

can be no implied contract) (quoting *Dupree v. United Parcel Serv.*, 956 F.2d 219, 222 [10th Cir.

1992]).  Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's

promissory estoppel claim.

**5.**   ***Conclusions***

Based on the foregoing it is therefore

ORDERED as follows:

1.  Defendant's Motion for Summary Judgment (# 47) is GRANTED in part and

DENIED in part.  Defendant's Motion for Summary Judgment is DENIED as to Plaintiff's

federal law claims and GRANTED as to Plaintiff's state law claims.

2.  The final judgment entered at the conclusion of the case will include judgment in favor

of Defendant and against Plaintiff on Plaintiff's third claim for relief, breach of contract, and

fourth claim for relief, promissory estoppel.

4.  The court will hold a Final Pretrial Conference commencing at 10:00 o'clock a.m. on Friday, **September 2, 2005**, in Courtroom A1001, Alfred A. Arraj United States Courthouse, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which is attached.

Dated this   15   day of July, 2005.

BY THE COURT:

 s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge

**INSTRUCTIONS FOR PREPARATION AND SUBMISSION OF FINAL PRETRIAL ORDER**

(Click here to return to Table of Contents)

Counsel are directed to meet in advance of the final pretrial conference and jointly develop the contents of the proposed Final Pretrial Order which shall be presented for the court's approval *no later than five days before the final pretrial conference*. Electronic filers must follow ELECTRONIC CASE FILING PROCEDURES FOR THE DISTRICT OF COLORADO (CIVIL CASES) § V.L. concerning submission of proposed orders. Also, attention is directed to Fed. R. Civ. P. 16(d) (" The conference shall be attended by at least one of the attorneys who will conduct the trial for each of the parties and by any unrepresented parties.").

Listed on the following pages are matters to be included in the Final Pretrial Order. For convenience of the court and counsel, the prescribed sequence and terminology should be used in the preparation of the Final Pretrial Order. The bracketed and italicized information on the form explains what the court expects. The form for the Final Pretrial Order can be copied, printed, or downloaded from the court's web site, www.cod.uscourts.gov. The form is pages four through six of my Practice Standards — Civil posted on the web site. Click first on the " United States District Court" button and then on the " Judges' Information" button to navigate to these trial procedures. A computerized version of the form (in WordPerfect version 9) can be obtained by delivering a 3½" diskette to my secretary or courtroom deputy clerk and asking for a copy of the form.

The Final Pretrial Order shall be double-spaced in accordance with D.C.COLO.LCivR 10.1E, even though the instructions in the following format for the proposed Final Pretrial Order are single-spaced. Please note also that the attached form is customized for proceedings before me, since the magistrate judges are not involved in final pretrial conferences in cases assigned to me. Be careful to use this form, getting an electronic copy from my staff or the web site.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No.

@ ,

      Plaintiff,

v.

@ ,

      Defendant.

---

## FINAL PRETRIAL ORDER

### 6. DATE OF CONFERENCE

### 7. JURISDICTION

*[Provide a statement of the basis for subject matter jurisdiction with appropriate statutory citations. If jurisdiction is denied, **give the specific reason** for the denial.]*

### 8. CLAIMS AND DEFENSES

*[Summarize the claims and defenses of all parties, including the respective versions of the facts and legal theories. **Do not copy the pleadings.** Identify the specific relief sought. Eliminate claims and defenses which are unnecessary, unsupported, or no longer asserted.]*

### 9. STIPULATIONS

*[Set forth all stipulations concerning facts, evidence, and the applicability of statutes, regulations, rules, ordinances, etc.]*

### 10. PENDING MOTIONS

*[List any pending motion to be decided before trial, giving the filing date and the filing date of any briefs in support or opposition. Include any motions on which the court has expressly postponed ruling until trial on the merits. If there are no pending motions, please state, "None."]*

## 11. WITNESSES

a.        **Non-Expert Witnesses**

[*List the* <u>*non-expert*</u> *witnesses to be called by each party.  List separately*:]

        1.        witnesses who <u>***will***</u> be present at trial (*see* Fed. R. Civ. P. 26[a][3][A])

        2.        witnesses who <u>***may***</u> be present at trial if the need arises (*see* Fed. R. Civ. P.26[a][3][A])

b.        **Expert Witnesses**

[*List the* <u>*expert*</u> *witnesses to be called by each party.  List separately*:]

        1.        witnesses who <u>***will***</u> be present at trial (*see* Fed. R. Civ. P. 26[a][3][A])

        2.        witnesses who <u>***may***</u> be present at trial if the need arises (*see* Fed. R. Civ. P.26[a][3][A])

[**ADDITIONAL INSTRUCTION:** *With each witness's name, set forth (1) the witness's address and telephone number and (2) whether he or she is currently expected to testify in person or by deposition.*]

## 12. EXHIBITS

a.        **List of Exhibits**

[*List the exhibits to be offered by each party.  This list should be specific enough so that other parties and the court can understand, merely by referring to the list, each separate exhibit which will be offered.  General references such as "all deposition exhibits" or "all documents produced during discovery" are unacceptable.  If desired, the exhibit list form at the end of these materials may be used.  The form is available from the court's web site at the same location as this Final Pretrial Order form.*]

        *1.        Plaintiff(s):*

        *2.        Defendant(s):*

        *3.        Other parties:*

[*The following paragraph shall be included in the Final Pretrial Order:*]

b.        Copies of listed exhibits must be provided to opposing counsel no later than five days after the Final Pretrial Conference.  The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served (by electronic means, hand delivery or facsimile) no later than eleven days after the exhibits are provided.

## 13. DISCOVERY

[*Use the following language:*]

Discovery has been completed.  [***Unless otherwise ordered, upon a showing of good cause in an appropriate motion, there will be no discovery after entry of the Final Pretrial Order.***]

**14.  SPECIAL ISSUES**

[*List any unusual issues of law which the court may wish to consider prior to trial.  If none, please state, "None.*"]

**15.  EFFECT OF FINAL PRETRIAL ORDER**

[*The following paragraph shall be included in the Final Pretrial Order*:]

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court ___to prevent manifest injustice___.  The pleadings will be deemed merged herein.  This Final Pretrial Order supersedes the Preliminary Pretrial Order and the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

**16.  TRIAL AND ESTIMATED TRIAL TIME; TRIAL PREPARATION CONFERENCE**

a.　　　　　　State (1) whether trial is to the court or a jury, (2) estimated trial time, (3) situs of trial, and (4) any other orders pertinent thereto.

b.　　　　　　Trial Date: _____[7]

c.　　　　　　Trial Preparation Conference Date and Time: _____.  At the trial preparation conference, counsel are directed to comply with the Instructions Concerning Preparation for Trial Preparation Conference delivered to all parties at the Final Pretrial Conference.[8]

* * * * *

Please use the following format in the Final Pretrial Order:

DATED this __ day of _____, 200_.

BY THE COURT:

_____
EDWARD W. NOTTINGHAM
United States District Judge

FINAL PRETRIAL ORDER TENDERED
FOR REVIEW:

_____          _____
(Name)                                      (Name)

_____

[7]**NOTE TO COUNSEL AND THE PARTIES**: the court will set the trial date at the Final Pretrial Conference; or, if it cannot do so, it will enter further orders concerning a trial setting and further proceedings.

[8]**NOTE TO COUNSEL AND THE PARTIES**: the court will set the date for the Trial Preparation Conference and distribute copies of the " Instructions Concerning Preparation for Trial Preparation Conference" at the Final Pretrial Conference.  If counsel want copies of those instructions in advance of the Final Pretrial Conference, they should obtain them from the courtroom deputy clerk or from the court's web site at the same location as this Final Pretrial Order form.

(Address)                                        (Address)
(Telephone Number)                               (Telephone Number)
Attorney for Plaintiff                           Attorney for Defendant

Please affix counsel's signatures before submission of the Final Pretrial Order to the court.